JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Tina Martin ("Martin"), appeals her conviction for robbery. Finding no merit to the appeal, we affirm.
 {¶ 2} Martin was indicted in a one-count indictment for robbery, a third-degree felony in violation of R.C. 2911.02(B). The matter proceeded to trial and the jury returned a guilty verdict.[1]
 {¶ 3} The following evidence was presented at trial. On January 6, 2007, Martin entered the Harvard Avenue Dave's Supermarket whereupon she attempted *Page 3 
to remove a 24-pack of beer. In her attempt to do so, appellant caused cans to fall to the floor at which point the store's security guard, off-duty officer Scott Rossell, unaware that appellant's action was a theft attempt, approached Martin to assist her in picking up the cans. Martin left the 24-pack of beer and fled the store.
 {¶ 4} Approximately five minutes later, however, appellant returned to the store and proceeded to remove another 24-pack of beer from the store. Officer Rossell observed the theft in progress as appellant attempted to leave the store without paying for the beer. Officer Rossell ordered Martin to stop before she exited the store but she continued out the door. Officer Rossell followed Martin out of the store and again ordered her to stop. Martin did not stop and continued in her flight. Officer Rossell followed and proceeded to restrain her.
 {¶ 5} At this point, Martin became verbally belligerent by cursing at Officer Rossell, and physically combative by struggling with and swinging and kicking at Officer Rossell. In the struggle, Officer Rossell was able to get one handcuff on one of Martin's hands, while informing her that she was under arrest. At this point, Martin dropped the case of beer.
 {¶ 6} After an approximate two-minute struggle, Officer Rossell was able to fully restrain Martin, handcuff both hands and escort her to the store manager's office. Backup police officers arrived and transported Martin to the local police district for booking, charging her with robbery. *Page 4 
 {¶ 7} Martin now appeals, raising as her sole assignment of error: "The trial court erred in its judgment because its verdict was against the manifest weight of the evidence when it found the defendant-appellant guilty of robbery."
 {¶ 8} With respect to manifest weight of the evidence, the Supreme Court has stated:
 {¶ 9} "[although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. State v. Robinson (1955), 162 Ohio St. 486, 487. Weight of the evidence concerns `the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount ofcredible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 {¶ 10} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs v.Florida (1982), 457 U.S. 31, 42. See, also, State v. Martin (1983),20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses *Page 5 
and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 11} The requisites for robbery are found in R.C. 2911.02(B) which reads in part:
 {¶ 12} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 13} "(1) * * *
 {¶ 14} "(2) * * *
 {¶ 15} "(3) Use or threaten the immediate use of force against another.
 {¶ 16} "(B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree."
 {¶ 17} In order to complete the crime of robbery and sustain a conviction for robbery, the appellant must use or threaten the immediate use of force in attempting to flee after an attempted theft offense.
 {¶ 18} "`Immediately' is typically defined as follows: (1) without lapse of time; without delay; instantly; at once; (2) without intervening medium or agent, concerning *Page 6 
or affecting directly; (3) with no object or space intervening. * * * However, immediately is not a word capable of a hard and fast definition to every applicable situation. Whether the action is immediate depends upon the circumstances of the case. State v. Thornton (May 12, 1977), Franklin App. No. 77AP-53, 1977 Ohio App. LEXIS 8779. At the same time, immediately does not mean that all elements of a crime must occur concurrently or simultaneously in order for a crime to have been completed. State v. Meisenhelder (Oct. 12, 2000), Cuyahoga App. No. 76764, 2000 Ohio App. LEXIS 4745. Rather, it is sufficient to establish that the separate acts forming the elements of a crime constitute a single continuous transaction. Meisenhelder, supra. At a trial for robbery, whether the use of force occurs `immediately' after a theft offense is a question for the trier of fact. State v. Costa (Dec. 31, 1998), Greene App. No. 98-CA-32, 1998 Ohio App. LEXIS 6380; State v.Wright, (Feb. 3, 1997), Clermont App. No. CA96-02-022, 1997 Ohio App. LEXIS 350 [**8]." State v. Tate, 8th Dist. No. 82871, 2004-Ohio-2007, quoting State v. McDonald, 8th Dist. No. 78939, 2001 Ohio App. LEXIS 5403 at 9-10.
 {¶ 19} Martin argues that the state failed to prove the element of force beyond a reasonable doubt and to support her argument cites toOhio v. Furlow (1992), 80 Ohio App.3d 146. "Force" is defined in R.C.2901.01(A) as "any violence, compulsion, or constraint, physically exerted by any means upon or against a person or thing." *Page 7 
 {¶ 20} "In order to sustain a conviction for robbery, there must be an attempt or the commission of a theft offense. An element of such an offense is that there must be purpose to deprive the owner ofproperty.
 {¶ 21} "Under R.C. 2911.02, the elements of robbery must occur simultaneously in order for the offense to occur. Therefore, the state must prove that the accused's intent to deprive the owner of the property, as well as the actual taking (elements of the theft offense), coincided in point of time with the force or threat of force used in committing the theft offense, or in fleeing thereafter." State v.Ballard, 8th Dist. No. 46928, 14 Ohio App.3d 59.
 {¶ 22} In the instant matter, Martin exited the store with merchandise she had not purchased. She was approached by the store's security officer and was repeatedly instructed to stop. Martin refused to stop when instructed, pulled the security officer along as she attempted to break free from his grip, struggled with the security officer, flailed her arms, squirmed and cursed at the security officer.
 {¶ 23} At trial, testimony from an eyewitness, Patty Biennas, the store's front-end manager, corroborated Officer's Rossell's account of what happened.
 {¶ 24} "Q. Then what happened?
 {¶ 25} "A. Okay. Then he's — as he turn[s] around to go back towards the front door he hollers stop.
 {¶ 26} "I hear him holler stop. *Page 8 
 {¶ 27} "I turned around, the young lady was running out the door again, with the beer in her hand.
 {¶ 28} "Q. How much beer?
 {¶ 29} "A. [S]he had another 24-pack.
 {¶ 30} "Q. Do you know what kind?
 {¶ 31} "A. Millers.
 {¶ 32} "Q. Okay. Continue.
 {¶ 33} "A. So, um, that time Scott's running out behind her. I went out behind Scott. He stops her on the side of the building, which is right around in the front there.[2]
 {¶ 34} "By the time I get [sic] out there, from where I'm at to get out there, he's got one handcuff on her, and she's swinging away from him, and trying to run.
 {¶ 35} "He grabs her again. He gets her down, and get [sic] the other handcuff on her, and then we stood there like a minute or two for him to get his breath. And then we brought her back in the store.
 {¶ 36} "Coming back in the store she's cussing us and she's calling us names, F'in honky, F'in white B.
 {¶ 37} "She's telling us to call the cops, that she don't care. *Page 9 
 {¶ 38} "So we get her in the store, get her in the office. She's still calling us names, telling us that the only time she steals is when she's with her friends. That we should have caught her friends, too.
 {¶ 39} "That she doesn't come in there to steal unless she's with her friends. And then she start [sic] accusing — she starts kicking the desk.
 {¶ 40} "Q. The desk?
 {¶ 41} "A. Yes.
 {¶ 42} "Q. Where is this desk at?
 {¶ 43} "A. It's in the office, my manager's office.
 {¶ 44} "Q. Who's in that office when she's kicking the desk?
 {¶ 45} "A. Me and Scott.
 {¶ 46} "Q. Okay. What happens next?
 {¶ 47} "A. Okay.
 {¶ 48} "She started — at that time she's still cussing us and calling us names.
 {¶ 49} "Um, then she started accusing Scott of rape.
 {¶ 50} "Q. Okay.
 {¶ 51} "A. And telling me that I don't want to send her down here to jail because she'll just get raped down here.
 {¶ 52} "Q. Okay.
 {¶ 53} "A. And just stuff like. *Page 10 
 {¶ 54} "Then we call the police. And the police come, and the police took her." Tr. at 272 — 274.
 {¶ 55} It is clear from the eyewitness testimony of both Officer Rossell and the store manager Patty Biennas that Martin acted in a manner consistent with the statutorily defined act of robbery and that after reviewing the record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the trier of fact lost its way in its determination that Martin did in fact commit robbery under the single continuous transaction rule.
 {¶ 56} Martin further argues that the trial court committed plain error when it failed to incorporate into the definition of "force" the requirement of actual or potential harm.
 {¶ 57} "Although generally a reviewing court will not consider alleged errors that were not brought to the attention of the trial court, Ohio R. Crim.P. 52(B) provides that the reviewing court may consider errors affecting substantial rights even though they were not brought to the attention of the trial court. Plain error is an obvious error that affects a substantial right. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. Notice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice." State v.Ellis, 10th District No. 05AP-800, 2006-Ohio-4231. *Page 11 
 {¶ 58} In its instruction to the jury, the trial court read the definition of force, pursuant to R.C. 2911.02(A)(3), stating, "`Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 59} To support her argument, Martin relies on the analysis inState v. Furlow, 80 Ohio App.3d 146. The facts in that case vary greatly from the facts in the instant matter. In Furlow, the appellant snatched a wallet and five single-dollar bills from the victim's hand and ran. There was no further physical contact between appellant and victim. Such is not the case here. Martin physically struggled with Officer Rossell as he tried to apprehend her. She swung and kicked at the officer, and while handcuffed, pulled the officer along. Martin was violent and combative in her actions in an attempt to flee from the ongoing encounter. And although Officer Rossell did not sustain any physical injuries, Martin's actions, nonetheless, created potential harm for Officer Rossell.
 {¶ 60} The distinct difference in the actions of Martin and appellant in Furlow makes clear the purpose for the Committee Comment to R.C.2911.02, which states in part that, "* * * this section provides that the difference between theft and robbery is an element of actual orpotential harm to persons." Furlow, supra at 148. (Emphasis added.)
 {¶ 61} Martin has not shown that but for the omission of "actual or potential harm" terminology in the definition of force that the trier of fact would have
 {¶ 62} found her not guilty. *Page 12 
 {¶ 63} Martin's sole assignment of error is not well-taken. The judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, P.J., and ANN DYKE, J., CONCUR
[1] Subsequently, Martin was sentenced to a one-year term of imprisonment which she served and, after calculation of jail-time credit, was released on January 7, 2008.
[2] There was a sketch of the store drawn on a board that was in the courtroom. *Page 1