[Cite as *State v. Cox*, 2025-Ohio-1860.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Andrew J. King, P.J. |
|  | : | Hon. Robert G. Montgomery, J. |
| Plaintiff-Appellee | : | Hon. Kevin W. Popham, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 24-CA-00028 |
| LAWRENCE K. COX | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Appeal from the Fairfield Municipal Court,
                             Case No. 24-CRB-00203

JUDGMENT:                    Affirmed in part; Reversed in part,
                             Remanded

DATE OF JUDGMENT ENTRY:      May 21, 2025

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOSEPH M. SABO                        SCOTT P. WOOD
City of Lancaster Law Director's Office   Conrad & Wood
136 West Main Street                  120 E. Main Street, Ste. 200
Box 1008                              Lancaster, OH 43130
Lancaster, OH 43130

*Popham, J.,*

{¶1} Defendant-Appellant Lawrence K. Cox ("Cox") appeals his convictions and sentences after a bench trial in the Fairfield County Municipal Court.

*Facts and Procedural History*

{¶2} Cox is sixty-nine years old and has no prior criminal record. He owned residences in both Fairfield and Delaware Counties. Cox and his wife lived at the Delaware County residence from 2000 until 2012, when they moved to the Fairfield County residence after both lost their jobs. T. at 33 - 34.

{¶3} On February 8, 2024, the Fairfield County Court of Common Pleas, Domestic Relations Division, issued an ex parte civil protection order ("CPO") in favor of Cox's wife. The order applied to both the Fairfield and Delaware County residences and required Cox to vacate them immediately. T. at 13, 15; State's Exhibit A.

{¶4} According to Cox, on February 11 and 12, 2024, deputies from the Fairfield County Sheriff's Office advised Cox that he was required to leave the property due to the CPO. T. at 29. When Cox asked to see the order and the deputies were unable to produce it, the deputies left. *Id.*

{¶5} On February 13, 2024, deputies returned with the CPO and presented it to Cox. Their interaction was recorded on body cameras. T. at 7–9, 17–19; State's Exhibit B. The video footage shows Cox standing calmly on the porch, wearing shorts, and attempting to put on a jacket. Deputies instructed him to provide keys and garage door openers for both residences. State's Exhibit B at 00:37.

{¶6} Cox remained calm and polite throughout the encounter. He asked whether the CPO extended to his vehicle and demonstrated how deputies could access the home

in the event they lacked keys.  *Id.* at 01:51, 02:13. Cox stated his intention to file for a similar protection order at the courthouse, using the deputies' CPO as a template.  *Id.* at 03:19. He also asserted that, as a matter of property and constitutional law, if deputies returned, they would have to forcibly remove him.  *Id.* at 03:24.

{¶7}   The deputies advised Cox that he needed to leave immediately and requested his house keys.  *Id.* at 03:44. Three deputies accompanied him back inside the house.  Cox told the deputies he intended to violate every part of the order, because he was "going to go right now to the courthouse…." When asked if he intended to leave, he responded, "No, I am not leaving." *Id.* at 04:19. The sergeant immediately arrested Cox, who was informed he was being arrested for violating the CPO and was going to jail.  *Id.* at 04:20. Cox cooperated fully with the deputy's instructions and offered no resistance. *Id.*

{¶8}   On February 26, 2024, upon motion by Cox's attorney, the trial judge ordered Cox to be evaluated for competency and sanity.  The following day, the State filed an additional charge of Obstructing Official Business in violation of R.C. 2921.31.

{¶9}   On May 14, 2024, Cox was found sane and competent to stand trial.

{¶10}   On June 11, 2024, a trial to the court was held in this matter.  The trial judge found Cox guilty of Violating a Protection Order in violation of R.C. 2919.27 and Obstructing Official Business in violation of R.C. 2921.31. For the violation of a protection order charge, the judge sentenced Cox to 180 days in jail, suspended 63 days, and gave credit for 117 days of pretrial incarceration.  The judge ran the obstructing official business charge concurrent to the violation of a protection order charge, sentencing Cox to 90 days of jail time credit.

*Assignments of Error*

{¶11}  Cox raises three assignments of error,

{¶12}  "I. APPELLANT'S CONVICTION FOR VIOLATING A PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT HIS CONVICTION."

{¶13}  "II. APPELLANT'S CONVICTION FOR OBSTRUCTING OFFICIAL BUSINESS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HIS CONVICTION."

{¶14}  "III.  THE TRIAL COURT ERRED IN SENTENCING APPELLANT."

## ASSIGNMENTS OF ERROR I. & II.

{¶15}  In his first assignment of error, Cox contends that the evidence was insufficient to support his conviction for violating a protection order and, further his conviction was against the manifest weight of the evidence.

{¶16}  In his second assignment of error, Cox argues that the evidence was insufficient to support his conviction for obstructing official business, and further his conviction was against the manifest weight of the evidence.

{¶17}  Cox's first and second assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

### Standard of Appellate Review – Sufficiency of the Evidence

{¶18}  The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, along with the Due Process Clause, requires the State to prove each element of a crime to a

jury beyond a reasonable doubt.  *United States v. Gaudin*, 515 U.S. 506, 509–10 (1995); *Hurst v. Florida*, 577 U.S. 92 (2016).

{¶19}  Sufficiency of the evidence is a question of law reviewed de novo.  *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13.  The review entails examining the elements of the offense and the evidence presented.  *State v. Richardson*, 2016-Ohio-8448, ¶ 13.

{¶20}  In assessing sufficiency, an appellate court does not weigh credibility.  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded on other grounds by constitutional amendment as stated in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997); Walker*, ¶ 30.  The question is whether, viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found the defendant guilty beyond a reasonable doubt.  *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001), citing *Jenks*; *see also Walker*, ¶ 31; *State v. Poutney*, 2018-Ohio-22, ¶ 19.

{¶21}  A verdict will be upheld unless "reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Ketterer*, 2006-Ohio-5283, ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997); *accord State v. Montgomery*, 2016-Ohio-5487, ¶ 74.

**Issue for Appellate Review**: Whether *the evidence, viewed in the light most favorable to the prosecution, would convince a rational factfinder that Cox was guilty of violating a protection order and obstructing official business*

{¶22}  Cox was convicted of violating a protection order in violation of R.C. 2919.27(A)(2), which reads,

(A) No person shall recklessly violate the terms of any of the following:

(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code….

**{¶23}** "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22 (C).

**{¶24}** Here, the protection order issued pursuant to R.C. 3113.31(C) directed Cox to "**IMMEDIATELY VACATE**" both residences**.** (Emphasis in original). This plainly required him to leave the Fairfield residence without delay.

**{¶25}** "'Immediately' is typically defined as follows: (1) without lapse of time; without delay; instantly; at once; (2) without intervening medium or agent, concerning or affecting directly; (3) with no object or space intervening. * * * However, immediately is not a word capable of a hard and fast definition to every applicable situation. Whether the action is immediate depends upon the circumstances of the case." *State v. Thornton*, 1997 WL 200149 (10th Dist. May 12, 1977) at *2; *State v. Martin,* 2008-Ohio-1827, ¶ 18 (8th Dist.). *See also State v. Thomas,* 2005-Ohio-4106, ¶15 (Black's Law dictionary defines "immediate" as "[o]ccurring without delay." Black's Law Dictionary (8th Ed.2004) 764).

**{¶26}** The deputy told Cox to leave immediately. Cox did not request time to gather belongings but simply refused to leave.

**{¶27}** Viewing this evidence in a light most favorable to the State, a reasonable factfinder could find beyond a reasonable doubt that Cox recklessly violated the terms of a protection order issued pursuant to R.C. 3113.31.

**{¶28}** We therefore find that the State met its burden of production regarding each element of the offense and, accordingly, there was sufficient evidence to support Cox's conviction for violating a protection order.

**{¶29}** Cox was also convicted of Obstructing Official Business in violation of R.C. 2921.31, which states,

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

**{¶30}** To prove obstruction, the State must show an overt act, committed with obstructive intent, that actually hampers the official. *State v. Davis*, 2017-Ohio-5613, ¶ 37 (2d Dist.). "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *State v. Henry*, 2018-Ohio-1128, ¶ 55 (10th Dist.), *quoting State v. Wellman*, 2007-Ohio-2953, ¶ 12 (1st Dist.). *See also State v. Stancato*, 2024-Ohio-2632, ¶ 13 (5th Dist.).

**{¶31}** Needlessly stalling or escalating an investigation is an overt act. *State v. Willey*, 2015-Ohio 4572 ¶ 24 (5th Dist.). Additionally, in *State v. Florence*, 2014-Ohio-2337, ¶ 12 (12th Dist.), the Court found:

> For the purposes of an affirmative act, we have previously found that moving away from officers, subjecting officers to verbal abuse, and physically resisting officers was sufficient to convict a defendant of obstructing official business. *State v. Merz*, 12th Dist. Butler No. CA97-05-108, 2000 WL 1051837 (July 31, 2000). Additionally, a defendant's volume and demeanor making it impossible to investigate a complaint has been found sufficient to constitute an act for an obstructing official business conviction. *City of Warren v. Lucas*, 11th Dist. Trumbull No. 99-T-0019, 2000 WL 655446 (May 19, 2000).

*Florence* at ¶ 12.

**{¶32}** The body camera video shows that Cox remained calm, and never raised his voice. Nor did he struggle, become loud, or act in a verbally abusive manner. Cox simply stated he would not leave, after which he was arrested. Cox followed the deputy's directions, was handcuffed, walked outside, and placed into a cruiser without incident. The State cites to no overt act apart from his disobedience of the CPO to support the conviction.

**{¶33}** Because Cox took no affirmative action that impeded the deputies, the evidence is insufficient to support his conviction for obstructing official business. His refusal to leave, while sufficient to support the violating a protection order conviction, does

not establish the requisite intent to act to prevent, obstruct, or delay the deputies in the performance of their lawful duties.

## Standard of Appellate Review –Manifest Weight of the Evidence

{¶34}   The term **"manifest weight of the evidence"** relates to persuasion.  *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19.  It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶35}  When reviewing the manifest weight of the evidence, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient.  *Thompkins*, 78 Ohio St.3d at 386 - 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).  In this role, an appellate court acts as a "thirteenth juror" and may disagree with the jury's assessment of conflicting testimony.  *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *State v. Wilson*, 2007-Ohio-2202, ¶ 25.

{¶36}  Appellate courts traditionally presume the factfinder's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in evaluating credibility.  *Eastley*, 2012-Ohio-2179, ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶37}  However, the Eighth District recently noted in *State v. Reillo*, 2024-Ohio-3307, ¶ 20, *appeal allowed,* 2025-Ohio-705 (Table), that *Eastley* arguably extended this presumption from civil to criminal cases.  *Id.* at ¶ 27.  The court cautioned that deferring

to credibility determinations would collapse the distinction between sufficiency and weight of the evidence. *Reillo* at ¶ 23. It observed that if credibility findings were insulated from review, there would be little reason to raise a manifest-weight challenge. *Id. See also State v. Butler*, 2024-Ohio-5879, ¶ 27 (5th Dist.). Thus, acting as a thirteenth juror, the appellate court reviews credibility de novo. *Id.*

**{¶38}** A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶39}** To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2–4, citing *Thompkins*, syllabus ¶ 4.

**Issue for Appellate Review**: Whether *the judge clearly lost his way and created such a manifest miscarriage of justice that Cox's conviction for violating a protection order must be reversed and a new trial ordered*[1]

**{¶40}** Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we conclude that the judge did not lose his way or create a manifest miscarriage of justice.

**{¶41}** Cox does not deny that he told the deputies he would not leave the home. The body camera video corroborates the testimony.

**{¶42}** The record contains no compelling evidence that weighs heavily against Cox's conviction. We find the greater amount of credible evidence produced at trial supports the judge's conclusion that Cox violated the protection order. Accordingly, we

---

[1] Because we have found the evidence insufficient to convict Cox of obstructing official business, his manifest weight argument with respect to his obstructing official business conviction is moot.

find no indication that the judge lost his way or ignored substantial evidence in reaching his decision.

**{¶43}** Cox's first assignment of error concerning his conviction and sentence for violation of a protection order is overruled.

**{¶44}** Cox's second assignment of error concerning his conviction and sentence for obstructing official business is sustained.

III.

**{¶45}** In his third assignment of error, Cox contends the judge should have merged the convictions for sentencing as allied offenses of similar import pursuant to R.C. 2941.25.

**{¶46}** In light of our disposition of Cox's second assignment of error, we find Cox's third assignment of error to be moot.

## Conclusion

**{¶47}** Section 3(B)(2), Article IV of the Ohio Constitution and R.C. 2953.07 authorize an appellate court to affirm, reverse, or modify a lower court's judgment.

**{¶48}** Cox's conviction and sentence for violating a protection order are affirmed.

**{¶49}** Cox's conviction and sentence for obstructing official business are reversed.

{¶50} The judgment of the Fairfield County Municipal Court is affirmed in part, reversed in part, and this case is remanded to the trial court for further proceedings in accordance with our opinion and the law.


By Popham, J.,

King, P.J., and

Montgomery, J., concur