[Cite as *State v. Smiley*, 2025-Ohio-2666.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Andrew J. King, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Kevin W. Popham, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2024 CA 00146 |
| SAVIER SMILEY | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Appeal from the Stark County Court of
Common Pleas Court, Case No. 2023 CR
2445

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: July 29, 2025

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KYLE STONE                                D. Coleman Bond
Stark County Prosecutor                   116 Cleveland Ave. N.W.
BY:CHRISTOPHER A. PIEKARSKI               Canton, OH 44702
Assistant Prosecutor
110 Central Plaza S.
Canton, OH 44702-1413

*Popham, J.,*

{¶1}   Defendant-Appellant Savier Smiley ("Smiley") appeals his convictions and sentences after a jury trial in the Stark County Court of Common Pleas.  For the reasons below, we affirm.

### Facts and Procedural History

{¶2}   On July 10, 2024, the State filed a superseding indictment charging Smiley with murder (R.C. 2903.02(B)), felonious assault (R.C. 2903.11(A)(1)/(2)), involuntary manslaughter (R.C. 2903.04(A)), aggravated assault (R.C. 2903.12(A)(1)/(2)), and having weapons while under disability (R.C. 2923.13(A)(2)), each with a firearm specification under R.C. 2941.145(A).

### The Evidence

{¶3}   At approximately 10:30 p.m. on October 20, 2023, Canton police responded to a shooting on Maple Avenue NE.  Detectives Hampton and Thomas found Dontae "Rel" Crayton in the master bathroom, suffering from a gunshot wound to the abdomen.  Crayton, Smiley's mother's fiancé, later died from internal bleeding.  No firearms or shell casings were found at the scene.

{¶4}   Officers identified Smiley as the shooter and located him at a nearby residence with his fiancée, C.D.  After repeated announcements over the span of 20 to 25 minutes, C.D. and Smiley emerged one at a time from the residence, surrendered, and were taken into custody without further incident.  A consent search revealed a loaded handgun under a mattress within the residence from which C.D. and Smiley emerged.  Forensic testing confirmed the handgun was the murder weapon.

{¶5}   Smiley's mother, Y.J., was interviewed and reported that she had argued with Crayton, who spat on her.  Later, while she was washing her face, she heard a loud noise.  She had no visible injuries.

{¶6}   Smiley was also interviewed.  Initially reluctant, he ultimately admitted to shooting Crayton but claimed he did not know the gun was loaded. In a subsequent interview during the early hours of October 21, 2023, Smiley stated he saw Crayton spit on his mother, who told Smiley to calm down and that she was ending her relationship with Crayton.  Smiley returned to his room but later went back to the bedroom where Crayton was located and the argument resumed.  After the shooting, Smiley called 9-1-1.  In recorded jail calls, Smiley stated, "I messed up this time," and referenced ignoring C.D.'s warnings. Smiley also told his grandmother he was tired of men abusing his mother.

{¶7}   C.D. testified on Smiley's behalf.  At the time of the shooting, she was 17 years old and pregnant with his child.  C.D. testified that she and Smiley had been in his bedroom watching a show and playing a game.  The two went downstairs to let the dogs out.  C.D. then went to the bathroom, while Smiley returned upstairs to take a breathing treatment for his asthma, which had been bothering him that day.

{¶8}   C.D. testified that while she was downstairs in the bathroom, directly below Y.J.'s room, she heard yelling and rushed upstairs.  C.D. saw Crayton pinning Smiley against a wall.  C.D. tried unsuccessfully to separate Crayton and Smiley.  After Crayton released Smiley, C.D. and Smiley went into Smiley's younger brother's bedroom across the hall, where C.D. tried to calm Smiley down.

{¶9} C.D. further testified that Crayton entered the room where she and Smiley were. Crayton continued yelling at Smiley and threatening to fight him. Crayton repeatedly moved between rooms approximately five times, yelling with his fists clenched. After the second time, C.D. closed the bedroom door, but Crayton reopened it.

{¶10} C.D. testified that she and Smiley planned to go downstairs to retrieve the dogs, but before they could, Crayton returned. C.D. then heard a gunshot and saw Crayton walk back into Y.J.'s bedroom. C.D. testified that Smiley began "freaking out," then he ran downstairs and called 9-1-1. C.D. admitted that she did not initially tell police about any threats made by Crayton and only recalled them after speaking with the prosecutor a week before trial.

{¶11} Smiley testified at trial and admitted that he shot Crayton. He further testified that he has a prior adjudication as a juvenile for a burglary charge and, therefore, is not permitted to possess a firearm.

{¶12} Smiley testified that, while in his room, he heard his mother yelling "get off me," and, when he entered her bedroom, he saw Crayton pinning her against the wall with both hands around her neck, choking her. Crayton was spitting in her face multiple times while she cried and scratched at him. Crayton did not release her until Smiley repeatedly demanded that he do so.

{¶13} Smiley testified that Crayton swung at him. Smiley avoided the punch, but Crayton pinned him by his biceps against the wall. C.D. arrived and tried to intervene. Crayton then threatened Smiley, telling him that his older brothers were not there to protect him. Smiley testified that he felt afraid and helpless.

{¶14}   Smiley further testified that the confrontation continued even after Smiley left the room.  Crayton repeatedly followed him, yelling and invading his space.  Though C.D. urged Smiley to leave, he refused, fearing his mother's safety.  Smiley testified that Crayton re-entered the room approximately four to six times.

{¶15}   Smiley testified that, just before the shooting, he had agreed to leave, but, as he and C.D. walked down the hallway, Crayton rushed at him.  Smiley claimed he fired out of fear and did not intend to kill.

{¶16}   The jury found Smiley not guilty of murder and felonious assault but guilty of involuntary manslaughter, aggravated assault, and having a weapon while under disability, along with all three attendant firearm specifications.  The trial court sentenced Smiley to an aggregate indefinite prison term of 16 years to 21.5 years.

*Assignments of Error*

{¶17}   Smiley raises two Assignments of Error for our consideration,

"I.  THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND MUST BE REVERSED."

"II. APPELLANT ASSERTS THAT THE TRIAL COURT ERRED BY IMPOSING THE MAXIMUM PRISON TERM AVAILABLE FOR HIS CONVICTION OF INVOLUNTARY MANSLAUGHTER AND SEEKS APPELLATE REVIEW OF THAT SENTENCE PURSUANT TO R.C. 2953.08(A)."

## I. Weight of the Evidence

{¶18} Smiley contends that his convictions for involuntary manslaughter and aggravated assault must be reversed because the evidence produced during trial established that he acted in self-defense, and the State failed to disprove beyond a reasonable doubt at least one of the elements of self-defense. *State v. Messenger*, 2022-Ohio-4562, ¶19.

*Standard of Review*

{¶19} The State's burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal. *State v. Messenger*, 2022-Ohio-4562, ¶27.

{¶20} When we review whether there was *enough* evidence to support a conviction, we do not ask ourselves whether the State's case was convincing, we are simply asking whether there was *any* evidence that could support each element of the charged offense. This standard of review is known as a sufficiency of evidence review.

{¶21} A second standard of review is manifest weight of the evidence, which relates to persuasion. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 n.4 (1997); *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶22} When reviewing the manifest weight of the evidence, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest

miscarriage of justice, even if the evidence is legally sufficient. *Thompkins*, 78 Ohio St.3d at 386, 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

{¶23} Appellate courts have traditionally presumed the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in evaluating credibility. *Eastley*, 2012-Ohio-2179, ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). As the *Eastley* Court noted, "If the evidence is susceptible to more than one interpretation, the reviewing court is bound to adopt the one most consistent with the verdict and judgment, and most favorable to sustaining them."

{¶24} Although the reviewing court is sometimes described as acting as a "thirteenth juror," its role in a manifest weight review is, in practice, highly constrained. In essence, this deference raises a fundamental question about the role of the appellate court in reviewing factual findings; if the court must construe the evidence in the light most favorable to the verdict, does it ever truly exercise independent judgment in manifest weight analysis? Or is its function effectively reduced to verifying that the jury's decision was not utterly irrational?

{¶25} This principle limits the scope of meaningful appellate intervention. It suggests that, even when the reviewing court is not personally persuaded of the defendant's guilt, it may still be compelled to affirm the verdict if any reasonable interpretation of the evidence supports the jury's conclusion. Under this standard, appellate courts can find themselves affirming verdicts not because they are independently convinced of their correctness, but because the jury's view of the evidence cannot be considered so unreasonable as to call for reversal. In this sense, the concept

of the appellate court as a "thirteenth juror" becomes more metaphorical than functional. The court is not truly reweighing evidence as a juror might; rather, it is applying a legal standard that heavily favors upholding the jury's conclusions, even in close or contested cases.

{¶26} However, the Eighth District Court of Appeals recently noted in *State v. Reillo*, 2024-Ohio-3307, ¶ 20, *appeal allowed,* 2025-Ohio-705 (Table), that *Eastley* arguably extended this presumption from civil to criminal cases. *Id.* at ¶ 27. The court cautioned that deferring to credibility determinations would collapse the distinction between sufficiency and weight of the evidence. *Reillo* at ¶ 23. It observed that if credibility findings were insulated from review, there would be little reason to raise a manifest-weight challenge. *Id. See also State v. Butler*, 2024-Ohio-5879, ¶ 27 (5th Dist.).

{¶27} In contrast to *Eastley*, in *State v. Jordan*, decided eleven years after the decision in *Eastley*, the Supreme Court of Ohio reiterated that an appellate court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *Jordan*, 2023-Ohio-3800, ¶ 17. The Court specifically directed, "'Sitting as the "thirteenth juror,"' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion." *Id.*, *citing State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶28} Under this analysis, the appellate court may reassess the persuasiveness of the evidence and reach its own determination regarding guilt. Appellate determination is not confined to the most favorable reading of the evidence for the verdict. Rather, an

appellate court may reverse a conviction if it finds the jury's evidentiary interpretation unconvincing.

{¶29} This approach reanimates the "thirteenth juror" concept in a more functional sense. The appellate court actively evaluates whether the jury's verdict aligns with the weight of the evidence, rather than merely validating that it was not irrational. Thus, acting as a thirteenth juror, the appellate court reviews credibility in a manner similar to a de novo review, which is without deference to the jury's findings. *Id. See also State v. Cox*, 2025-Ohio-1819, ¶ 37 (5th Dist.); *State v. Higgins,* 2025-Ohio-2122, ¶ 80 (5th Dist.); *State v. Ray*, 2025-Ohio-2023, ¶ 51; *State v. Soto*, 2025-Ohio-1788, ¶ 42.

{¶30} A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶31} To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2-4, citing *Thompkins*, syllabus ¶ 4.

*Self-defense - Deadly force*

{¶32} R.C. 2901.05(B)(1), states:

(B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If at the trial of a person who is accused of an offense that involved that person's use of force against another, there is evidence that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's

residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶33} When an accused asserts self-defense he does not seek to negate any of the elements of the offense which the State is required to prove. Self-defense is not merely a denial or contradiction of evidence offered by the State to prove the essential elements of the charged crime. Rather, it is an admission of the prohibited conduct coupled with a claim that the surrounding facts or circumstances exempt the accused from liability therefor- "justification for admitted conduct." *State v. Poole*, 33 Ohio St.2d 18 (1973).

{¶34} At the close of Smiley's trial, the court instructed the jury on self-defense, meaning the record contained evidence tending to show that Smiley acted in self-defense when he shot Crayton. R.C. 2901.05(B)(1); *Messenger*, ¶ 26. The guilty verdict means the State met its burden of persuading the jury beyond a reasonable doubt that Smiley was not acting in self-defense. *Id.*

{¶35} The jury found Smiley guilty of involuntary manslaughter, which occurs when a person causes the death of another "as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). The jury also found him guilty of aggravated assault. Aggravated assault, an inferior-degree offense to felonious assault, is defined as knowingly:

(1) Causing serious physical harm to another while under the influence of sudden passion or a sudden fit of rage brought on by serious

provocation by the victim that is reasonably sufficient to incite the use of deadly force; or

(2) Causing or attempting to cause physical harm with a deadly weapon or dangerous ordnance. R.C. 2903.12(A).

{¶36} When deadly force is used, as here, the elements of self-defense that the State must disprove are at least one of the following: (1) the defendant was not at fault in creating the situation; (2) the defendant had reasonable grounds to believe, and an honest belief, even if mistaken, that he was in imminent danger of death or great bodily harm, and (3) the defendant did not violate any duty to retreat. *State v. Robbins*, 58 Ohio St.2d 74, 79 (1979); *see also State v. Knipp*, 2024-Ohio-2143, ¶ 23; *Watson*, ¶ 84; *State v. Barker*, 2022-Ohio-3756, ¶ 27 (2d Dist.); *State v. Evans*, 2002-Ohio-2610, ¶ 53 (8th Dist.); *State v. Hamilton*, 2002-Ohio-3862, ¶ 17 (12th Dist.).

{¶37} Here, the trial court instructed the jury on Ohio's "stand your ground" law. 3T. at 46-468. Under R.C. 2901.09(B), "a person has no duty to retreat before using self-defense if that person is in a place where they lawfully have a right to be." *Messenger*, 2022-Ohio-4562, ¶ 10; *State v. Degahson*, 2022-Ohio-2972, ¶ 15 (2d Dist.); *Knipp*, ¶ 24; *Watson*, ¶ 85; *State v. Mitchell*, 2023-Ohio-2604, ¶ 17 (1st Dist.); *State v. Robinette*, 2023-Ohio-5, ¶ 51 (5th Dist.). "Simply put, the new 'stand your ground' law removes, in most cases, the duty to retreat." *Degahson*, ¶ 15; *Knipp*, ¶ 24; *Watson*, ¶ 85; *Mitchell*, ¶ 17; *State v. Robinette*, 2023-Ohio-5, ¶ 51 (5th Dist.).

{¶38} The second element of self-defense in a deadly force scenario requires both a subjective belief of imminent danger and an objectively reasonable basis for that belief. *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997). The objective prong considers whether,

based on all the circumstances—including the defendant's characteristics, knowledge, and the conditions at the time—a reasonable person would believe that danger was imminent. *State v. Hendrickson*, 2009-Ohio-4416, ¶ 30 (4th Dist.). The subjective prong asks whether the defendant actually believed he was in imminent danger. *Id.*; *see also State v. Bundy*, 2012-Ohio-3934, ¶ 54 (4th Dist.); *State v. Wilson*, 2022-Ohio-3801, ¶ 13 (1st Dist.); *Knipp*, ¶ 25.

{¶39} Here, the evidence does not support that Smiley held either the objective or subjective belief necessary to justify the use of deadly force. Words or fear alone generally do not constitute serious provocation. "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *State v. Shane*, 63 Ohio St.3d 630, 634-35 (1992). Fear alone is insufficient to show the emotional state required for sudden passion or rage. *State v. Mack,* 82 Ohio St.3d 198, 201 (1998). Even a shove or punch typically does not amount to sufficient provocation. *See, e.g., State v. Koballa*, 2003-Ohio-3535 (8th Dist.); *State v. Poe*, 2000-Ohio-1966 (4th Dist.); *State v. Pack*, 1994 WL 274429 (4th Dist. Jun. 20, 1994).

{¶40} Although these cases use provocation language, the analysis applies equally to whether Smiley had a reasonable and honest belief in his imminent danger. *State v. Becker*, 2023-Ohio-601, ¶ 27 (5th Dist.); *Paskins*, 2023-Ohio-3137, ¶ 87; *Knipp*, ¶ 26.

{¶41} Implicit in the second element of self-defense is the requirement that the degree of force used was warranted under the circumstances and proportionate to the perceived threat. *State v. Kean*, 2019-Ohio-1171, ¶ 58 (10th Dist.). As to the degree of force that is permitted, the defendant is privileged to use the amount of force that is

reasonably necessary to repel the attack. *State v. Williford*, 49 Ohio St.3d 247 (1990). In other words, one may use a commensurate amount of force as the circumstances require to protect oneself against an attack. *City of Akron v. Dokes*, 31 Ohio App.3d 24, 25 (9th Dist. 1986); *Watson* at ¶88. If the evidence does not establish defendant's objective or subjective belief in fear of death or great bodily harm, then the defendant is only privileged to use non-deadly force.

{¶42} Even assuming Smiley was not the initial aggressor, he testified to only verbal threats and being pinned once against a wall. Crayton was unarmed. Moreover, C.D. did not express fear. In fact, she intervened to attempt to diffuse the situation. Nothing in the record indicates Smiley's mother was being physically attacked at the time of the shooting. Although Smiley had no duty to retreat, he could not lawfully shoot an unarmed individual merely for verbal abuse. If Smiley's fear was of physical harm only, he was legally permitted to use force proportionate to that threat. His use of deadly force was excessive and unjustified under these circumstances.

{¶43} Accordingly, in light of the record, we find the jury did not clearly lose its way in convicting Smiley of involuntary manslaughter and aggravated assault. The State met its burden of persuading the jury beyond a reasonable doubt that Smiley was not acting in self-defense, the evidence does not heavily weigh against the conviction, nor did the jury overlook any compelling evidence in his favor.

{¶44} Smiley's first assignment of error is overruled.

## II. Maximum Sentence

{¶45} In his second assignment of error, Smiley contends that the trial judge failed to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11 and R.C. 2929.12 when sentencing him to maximum sentence for involuntary manslaughter.

*Standard of Appellate Review – Maximum Sentences*

{¶46} Under R.C. 2953.08(A)(1), a defendant may appeal a maximum sentence as of right. Pursuant to R.C. 2953.08(F), we review the entire record, including oral and written statements, and the presentence investigation report. *See State v. Jones*, 2020-Ohio-6729, ¶ 36; *State v. Howell*, 2015-Ohio-4049, ¶ 31 (5th Dist.).

{¶47} An appellate court may modify or vacate a sentence if it clearly and convincingly finds that the record does not support the trial court's findings under certain statutory provisions, or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2); *State v. Bonnell*, 2014-Ohio-3177, ¶ 28. A sentence is "contrary to law" if it violates a statute. *Jones* at ¶ 34. "Clear and convincing evidence" is that which produces a firm belief or conviction. *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶48} An appellate court may not modify a sentence simply because it disagrees with the trial court's weighing of R.C. 2929.11 and 2929.12 factors. *Jones* at ¶ 39. However, if a sentence is based on factors extraneous to those statutes, it is contrary to law and reviewable. *State v. Bryant*, 2022-Ohio-1878, ¶ 22.

*Purposes and Principles of Felony Sentencing - R.C. 2929.11*

{¶49} R.C. 2929.11(A) provides that felony sentences must be reasonably calculated to achieve the two overriding purposes of felony sentencing: (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using

the minimum sanctions the court determines will accomplish those purposes. In doing so, the trial court must consider the need to incapacitate the offender, deter future crime by the offender and others, rehabilitate the offender, and provide restitution to the victim, the public, or both.

{¶50} In addition, R.C. 2929.11(B) requires that a sentence be commensurate with, and not demeaning the seriousness of, the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

*Seriousness and Recidivism – R.C. 2929.12*

{¶51} R.C. 2929.12 provides guidance regarding the seriousness of the offense and the likelihood of recidivism. Subsections (B) and (C) list factors indicating whether the offender's conduct is more or less serious than conduct normally constituting the offense. These factors include: the victim's age; the physical, psychological, or economic harm to the victim; whether the offender's relationship with the victim facilitated the offense; the offender's criminal record; whether the offender was under court sanction at the time; expressions of remorse; and any other relevant factors.

{¶52} Subsections (D) and (E) address factors that indicate whether the offender is likely—or not likely—to commit future crimes.

**Issue for Review**

{¶53} The issue is whether Smiley's sentence was based on impermissible considerations, i.e., factors outside those permitted by R.C. 2929.11 and 2929.12.

{¶54} Smiley challenges the trial court's imposition of the maximum sentence for involuntary manslaughter. He argues that in the absence of specific findings that his

offense constituted the worst forms of conduct, or that he posed a high risk of recidivism, the sentence is not supported by the record or statutory findings.

{¶55} Here, Smiley was sentenced under R.C. 2929.14(A)(1)(a) for a first-degree felony to an indefinite term with a stated minimum of eleven years. Under R.C. 2929.144, the maximum term in this case is calculated as the minimum term plus 50%, resulting in a maximum term of 16.5 years[1]. A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law if the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12. *State v. Keith*, 2016-Ohio-5234, ¶¶ 10, 16 (8th Dist.); *State v. Taylor*, 2017-Ohio-8996, ¶ 16 (5th Dist.).

{¶56} However, neither R.C. 2929.11 nor R.C. 2929.12 requires the trial court to make specific factual findings on the record. *Jones*, 2020-Ohio-6729, ¶ 20, citing *State v. Wilson*, 2011-Ohio-2669, ¶ 31, and *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). The trial court must "consider" the relevant statutory factors, but it need not make factual findings or recite them on the record. *State v. Bement*, 2013-Ohio-5437, ¶ 17 (8th Dist.); *State v. Combs*, 2014-Ohio-497, ¶ 52 (8th Dist.). The trial court has no obligation to state reasons to support its findings, nor is it required to give a talismanic recitation of the statute, so long as the necessary findings can be found in the record and are incorporated into the sentencing entry. *State v. Webb*, 2019-Ohio-4195, ¶ 19 (5th Dist.); *State v. Clanin*, 2024-Ohio-2445, ¶ 14 (5th Dist.).

---

[1] Smiley does not contest the consecutive sentences.

{¶57} Even if the sentencing transcript were silent as to the statutory factors, this Court has recognized a presumption that the trial court considered the factors where the sentencing entry indicates as such. *See State v. Hannah*, 2015-Ohio-4438, ¶ 13 (5th Dist.); *State v. Robinson*, 2013-Ohio-2893, ¶ 20 (5th Dist.); *State v. Crawford*, 2022-Ohio-3125, ¶ 18 (5th Dist.); *State v. Dale*, 2022-Ohio-4074, ¶ 12 (5th Dist.); *State v. Blosser*, 2024-Ohio-173, ¶¶ 16-17 (5th Dist.).

{¶58} In this case, the trial court considered the seriousness and recidivism factors. Sent. T. at 16. The record contains evidence that Smiley had four prior burglary convictions and spent time in the custody of the Department of Youth Services. *Id.,* 6. Further, Smiley had been involved in multiple incidents while being held in jail awaiting trial. State's Exhibit 2; Sent. T. at 8. In one such incident, Smiley beat an individual to the point that the victim required hospitalization. *Id.*

{¶59} Upon review, we find that the trial court's sentencing on the charges follows applicable rules and sentencing statutes. The sentence was within the statutory sentencing range, and Smiley has not shown that the trial court imposed the sentence based on impermissible considerations. Therefore, we have no basis for concluding that the sentence is contrary to law.

{¶60} Smiley's second assignment of error is overruled.

**{¶61}** The judgment of the Stark County Court of Common Pleas is affirmed.


By Popham, J., and

King, J., concur

Hoffman, P. J., concurs

Separately

*Hoffman, J., concurring*

**{¶62}** I concur in the majority's analysis and disposition of Appellant's two assignments of error with one exception. That exception concerns the standard of review this Court applies when considering a manifest weight of the evidence argument.

**{¶63}** The Ohio Supreme Court directs us to "… **consider** the credibility of witnesses…" in analyzing whether the jury "… clearly lost its way… creating a "… manifest injustice." *State v. Jordan*, 2023-Ohio-3800, ¶ 17 (Emphasis added). I maintain the traditional presumption the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, as discussed in *Eastley v. Volkman*, 2012-Ohio-2179, ¶¶ 20-21, remain critical factors in evaluating credibility. Such clearly is a deferential standard.

**{¶64}** Yet the majority holds the appellate court reviews credibility "… in a manner similar to a de novo review, which is without deference to the jury's findings." (Maj. Op., ¶29).[2]

**{¶65}** I find it cannot be both – deferential or non-deferential. Though as appellate jurists we are not required to consider the incredulous as credible, I believe we must still apply a level of deference – one difficult to quantify or define - just as I believe "in a manner similar to de novo review" is likewise difficult to articulate.

---

[2] I concede I concurred in use of such standard in this Court's opinions in *State v. Higgins*, 2025-Ohio-2122 (5th Dist.), and *State v. Ray*, 2025-Ohio-2023 (5th Dist.). But upon further reflection, I now voice my disagreement as I did in my concurring opinion in *In Re: A.S.*, 2025-Ohio-____ (5th Dist.), Ashland 24-COA-035 (July 21, 2025).