[Cite as *Hyde v. Sherwin-Williams Co.*, 2011-Ohio-4234.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95687**

---

# GARY L. HYDE

PLAINTIFF-APPELLEE

vs.

# SHERWIN-WILLIAMS CO., ET AL.

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-712677

**BEFORE:** Keough, J., Kilbane, A.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** August 25, 2011

**ATTORNEYS FOR APPELLANTS**

John Gerak
Thomas H. Barnard
Ellen Toth
Ogletree Deakins Nash Smoak & Stew
127 Public Square
Suite 4130
Cleveland, OH 44114-1724

**ATTORNEYS FOR APPELLEE**

Richard C. Haber
Bradley J. Barmen
Jennifer Rinkes
Haber Polk Kabat LLP
737 Bolivar Road
Suite 4400
Cleveland, OH 44115


KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendants-appellants, The Sherwin-Williams Company ("Sherwin-Williams" or the "Company"), James McIlwee, and Timothy White, appeal from the trial court's judgment denying their motion to stay proceedings pending arbitration of plaintiff-appellee Gary L. Hyde's age discrimination claim. Finding no merit to the appeal, we affirm.

I

{¶ 2} At issue in this case are Sherwin-Williams' Problem Resolution Procedures ("PRP") and its Employment Dispute Mediation and Arbitration Policy ("EDMAP"). The PRP and EDMAP are formalized procedures

implemented by Sherwin-Williams for resolving employee disputes with the Company.

{¶ 3} The PRP provides four steps for review of employee disputes: (1) discussion with the employee's direct supervisor; (2) review of the supervisor's decision by the next higher level of supervision, the human resources manager for the employee's group, and the headquarters human resources manager; (3) review by a panel consisting of various management personnel; and (4) for certain claims, mediation and/or arbitration pursuant to the EDMAP.

{¶ 4} The PRP provides that "[t]hese procedures *may* be used by employees to challenge the unresolved differences regarding application of Company policies, procedures or practices which affect their employment situation. These procedures are intended to be an exclusive, final and binding method to resolve all covered claims to the fullest extent permitted by law. Failure to use these procedures *may* preclude employees from pursuing any other legal right they may have in court or in other forums * * *." (Emphasis added.)

{¶ 5} The EDMAP provides the additional steps of mediation and arbitration for certain types of disputes that are not resolved through the PRP. It states that "[d]isputes covered by this policy * * * shall first be submitted to the internal steps of the applicable Group/Division [PRP]. If

such disputes are not resolved pursuant to those internal steps, they shall be subject to mediation and/or arbitration under this policy, which shall serve as the exclusive, final and binding resolution of the dispute to the fullest extent permitted by law."

**{¶ 6}** On a periodic basis, Sherwin-Williams requires its employees to electronically review, acknowledge, and agree to certain policies and procedures as a condition of their continued employment with the Company. On three occasions — August 11, 2005, September 27, 2006, and February 1, 2008 — Hyde reviewed and acknowledged electronic versions of the Company's "Explanatory Notice to Employees Regarding the PRP and EDMAP" with corresponding links to complete versions of the PRP and EDMAP.

**{¶ 7}** The Explanatory Notice that Hyde reviewed stated in relevant part:

**{¶ 8}** "[T]he Company and its employees agree to the fullest extent permitted by law, to resolve covered disputes through mediation and/or arbitration pursuant to the EDMAP, and to waive any right they may have to utilize any other legal procedures for resolving disputes, including but not limited to the right to file in court or to have a jury trial."

**{¶ 9}** Beginning in March 2007, shortly after defendant White became Hyde's supervisor, Hyde began receiving negative performance evaluations,

despite years of outstanding evaluations. Hyde subsequently initiated the PRP process, challenging his performance reviews and alleging that defendants McIlwee (who later became Hyde's supervisor) and White were engaged in age-related bias toward him. Ultimately dissatisfied with the resolution of his complaint, Hyde appealed the PRP Management Committee's decision to mediation. Subsequently, in June 2009, Sherwin-Williams terminated Hyde's employment. In December 2009, Hyde filed this lawsuit against defendants-appellants, asserting that their actions constituted age discrimination in violation of R.C. 4112 et seq.

{¶ 10} Before answering the complaint, defendants-appellants filed a motion to stay proceedings pending arbitration. Appellants argued that Hyde's age discrimination claim was subject to the arbitration agreement, as set forth in the PRP and EDMAP. The trial court subsequently denied the motion without opinion; this appeal followed.

## II

{¶ 11} Appellants assert three assignments of error on appeal. They contend that the trial court erred by: (1) not recognizing the written agreement between Hyde and Sherwin-Williams as the exclusive, final, and binding procedure to resolve all disputes regarding employment discrimination or the termination of Hyde's employment with Sherwin-Williams; (2) not staying the proceedings pending arbitration

pursuant to the Federal Arbitration Act, 9 U.S.C. §1 et seq., and R.C. 2711.01 et seq.; and (3) denying their motion to stay proceedings pending arbitration.

{¶ 12} Initially, we note that appellants' brief does not comply with App.R. 16 because appellants do not argue each assignment of error separately. App.R. 16(A)(7) requires "[a]n argument containing the contention of the appellant with respect to each assignment of error." Although an appellate court may jointly consider assignments of error that are related, the parties do not have the same option and are required to separately argue each assignment of error. *Fiorilli Constr., Inc. v. A. Bonamase Contracting, Inc.*, Cuyahoga App. No. 94719, 2011-Ohio-107, ¶30.

{¶ 13} Under App.R. 12(A)(2), an appellate court "may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief, as required under App.R. 16(A)." Thus, it would be within our discretion to simply disregard all of appellants' assignments of error and summarily affirm the trial court. *Cleveland v. Posner*, Cuyahoga App. No. 93893, 2010-Ohio-3091, ¶6. Nevertheless, in the interest of justice, we will address appellants' assignments of error. Further, we will consider them together, as they all relate to the trial court's denial of appellants' motion to stay the proceedings pending arbitration.

III

{¶ 14} In his brief in opposition to appellants' motion to stay proceedings and compel arbitration, Hyde argued that arbitration was not mandatory because the language of the PRP is ambiguous as to whether arbitration is voluntary or mandatory and, further, that the PRP is procedurally and substantively unconscionable and therefore, unenforceable as a matter of law. On appeal, appellants contend that under the PRP and EDMAP, Hyde's claim is subject to mandatory arbitration and the agreement is not unconscionable.

{¶ 15} The determination of whether an arbitration clause is unconscionable is a question of law; therefore, we apply a de novo standard of review. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. A de novo standard of review is likewise appropriate in this case because the issue of whether the parties are bound by the arbitration provisions in the PRP and EDMAP requires interpretation of the contract, which is an issue of law. *Berry v. Lupica*, Cuyahoga App. No. 90657, 2008-Ohio-5102, ¶7; *Ghanem v. Am. Greetings Corp.*, Cuyahoga App. No. 82316, 2003-Ohio-5935, ¶11.

IV

{¶ 16} Resolving disputes through the extra-judicial process of arbitration is generally favored in the law. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 1998-Ohio-294, 700 N.E.2d 859. An arbitration clause

in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract. Id.; *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶8. There is a strong presumption in favor of arbitration, and any doubt should be resolved in favor of arbitrability. *Melia v. Officemax N. Am. Inc.*, Cuyahoga App. No. 87249, 2006-Ohio-4765, ¶15, citing *Neubrander v. Dean Witter Reynolds, Inc.* (1992), 81 Ohio App.3d 308, 610 N.E.2d 1089.

{¶ 17} Under both the Federal Arbitration Act, 9 U.S.C. §1 et seq. (applicable in both federal and state courts),[1] and Ohio's Arbitration Act, R.C. 2711.01 et seq., a trial court is required to stay proceedings when a party demonstrates that an agreement exists between the parties to submit the issue to arbitration. In order for an arbitration agreement to be enforceable, however, the agreement must apply to the disputed issue and the parties must have agreed to submit that particular issue or dispute to arbitration. *Ghanem*, supra at ¶12.

{¶ 18} Hyde does not dispute that he agreed to the PRP as a term and condition of employment. He contends that "[t]his case does not question **if**

---

[1] *Weiss v. Voice/Fax Corp.* (1994), 94 Ohio App.3d 309, 312, 640 N.E.2d 875, citing *Southland Corp. v. Keating* (1983), 465 U.S. 1, 14-16, 104 S.Ct. 852, 79 L.Ed.2d 1.

Mr. Hyde agreed to the PRP; it questions to **what** Mr. Hyde agreed." (Emphasis in original.) While appellants assert that Hyde's acknowledgment means he agreed that the PRP is mandatory and is therefore precluded from pursuing his claim in court, Hyde contends that the language of the PRP indicates that Sherwin-Williams' employees are not required to participate in the PRP/EDMAP procedures.

{¶ 19} Hyde contends that this court's decision in *Hardwick v. Sherwin-Williams Co.*, Cuyahoga App. No. 81575, 2003-Ohio-657, supports his conclusion. In *Hardwick*, two former employees of Sherwin-Williams filed suit for sexual discrimination. The trial court denied Sherwin-Williams' motion to stay proceedings pending arbitration under the PRP. On appeal, this court found that neither plaintiff had signed or acknowledged receipt of the PRP at the time of its distribution nor agreed to use the PRP as the sole means of redress. Accordingly, this court held there was no mutual assent to the PRP policy. Id., ¶13.

{¶ 20} Further, this court found that the language Sherwin-Williams used to describe the PRP to its employees made the PRP seem optional. Specifically, this court found language that "'[t]hese procedures *may* be used by employees  * * *'", "'[a]ll regular full and part-time employees * * * are *eligible* to use the Problem Resolution procedures * * *'", and failure to use the procedures "'*may* preclude employees from pursuing any legal rights they

may have in court or in other forums'" implied that employees had a choice as to whether to use the PRP. Id. at ¶14. This court noted further that the PRP applied unilaterally to the employees, but did not apply to any legal claims that Sherwin-Williams might have against its employees. Id. at ¶3. Further, this court found that the PRP did not condition continued employment upon an employee's agreement to use the PRP procedures. Id. at ¶6. Accordingly, this court held that "[b]ased on the language defendant chose to employ in describing the PRP to its employees, we reject [Sherwin-Williams'] contention that such procedures were clear and unambiguous, mandatory conditions of employment." Id. at ¶16.

{¶ 21} Hyde contends that the language in the version of the PRP that he acknowledged and agreed to is identical to that considered in *Hardwick* and, accordingly, in light of this court's holding in *Hardwick*, his use of the PRP is permissive, instead of mandatory.

{¶ 22} *Hardwick*, which was decided in 2003, described the PRP as a "one-paged leaflet." Sherwin-Williams obviously made some changes to the PRP after the *Hardwick* decision. The PRP acknowledged and agreed to by Hyde is a four-page document and states that the PRP procedures "are intended to be an exclusive, final and binding method to resolve all covered claims to the fullest extent permitted by law." Further, it conditions employment and continued employment upon an employee's agreement to

resolve covered disputes through the PRP procedures.

{¶ 23} Nevertheless, the PRP still contains language implying that the PRP is optional. The PRP acknowledged by Hyde provides that "[t]hese procedures *may* be used by employees to challenge the unresolved differences * * * which affect their employment situation." (Emphasis added.) Further, despite an unequivocal assertion in the PRP that the PRP methods are "intended to be an exclusive, final and binding method to resolve all covered claims," the PRP states that "if you fail to appeal a decision with which you disagree, you *may* be precluded from taking your complaint to an outside forum for resolution" and "[f]ailure to use the procedures *may* preclude employees from pursuing any other legal rights the employees may have in court or in other forums." (Emphasis added.) These sentences clearly suggest that there may be situations where an employee is not precluded from pursuing his claim in court and, hence, that the procedures are not the final, mandatory means of resolving all employee disputes.

{¶ 24} Similarly, although appellants contend that Hyde signed two documents during the PRP process in which he acknowledged and agreed that the PRP and EDMAP processes were the exclusive, final, and binding means by which to resolve his claims, additional langugage, capitalized, in bold print and immediately following the provision that identified the procedures as "binding" stated:

**{¶ 25}** "I FURTHER UNDERSTAND THAT IF I DO NOT USE THESE PROCEDURES, I MAY BE PRECLUDED FROM PURSUING ANY OTHER LEGAL RIGHTS I MAY HAVE IN COURT OR IN OTHER FORUMS."

**{¶ 26}** We find that Sherwin-Williams' repeated representations that an employee's failure to follow the PRP "may" preclude that employee from seeking redress in outside forums expressly contradicts appellants' position that the procedures outlined in the PRP are the exclusive method for resolving employee disputes. By virtue of the language used — the same language the *Hardwick* court found indicated that use of the PRP was optional — appellants implied that there would be circumstances where an employee would not be prevented from pursuing resolution of their legal claims in outside forums, i.e., that the PRP procedures are not mandatory, final, or binding.

**{¶ 27}** Another phrase in the PRP — that "[d]isputes covered by the EDMAP that are not satisfactorily resolved through the initial steps of the Procedures are subject to mediation and/or arbitration" — likewise suggests that arbitration is not mandatory. The "and/or" language suggests that an employee is allowed to choose one or the other and that arbitration was not required in this case because Hyde engaged in mediation.

**{¶ 28}** Although appellants contend that the EDMAP makes clear that mediation and/or arbitration is final and binding, the EDMAP is merely a

subpart of the PRP, which indicates that the procedures are optional and that employees might be able to pursue their claims in outside forums.   In short, one part of the document indicates that the procedures are optional while the other suggests the procedures are mandatory.

{¶ 29} Further, we are not persuaded by appellants' assertion that the "may" language in the PRP simply means that an employee has the option of going to arbitration or doing nothing.   Appellants contend that a "long line" of federal and appellate courts have analyzed the use of the word "may" in mandatory arbitration agreements and concluded that it means that an employee who does not want arbitration has the option of abandoning his claim; appellants argue  that the same interpretation should apply to the PRP.   Specifically, appellants direct us to *Rutter v. Darden Restaurants, Inc.* (C.D.Cal.2008), No. CV 08-6106 AHM (Ssx), which they contend is "strikingly similar" to this case.   In *Rutter*, the plaintiff, like Hyde, did not dispute that he had agreed to a four-step mediation and arbitration procedure, but argued that the process was not mandatory because one sentence in the agreement provided that upon the conclusion of mediation, "if the dispute involves a legal claim, either the Employee or the Company can submit the matter to binding arbitration."   The *Rutter* court rejected the plaintiff's assertion that this language meant that arbitration was permissive, rather than mandatory, because it found that other language in the agreement stated unequivocally

that binding arbitration was the "sole and final process and remedy." The court further found that the phrase at issue "merely means a party who does not want arbitration has the option to abandon the claim. A party can choose between invoking his right to arbitration or forgoing further review." Appellants argue that we should reach the same result here.

{¶ 30} But the language of the arbitration agreements in *Rutter* and the other cases cited by appellants for this proposition is not relevant to the clause at issue here. The arbitration agreements in those cases contained clauses that essentially stated in various ways that "disputes may be referred to arbitration," which courts have widely interpreted to mean that a party has the choice between arbitration and abandonment of his claim.[2] But the "may" language in the phrase at issue here, i.e., "failure to use these procedures may preclude employees from pursuing any other legal rights they may have in court or in other forums," appears in a different context and is not used in reference to presenting a claim for arbitration. Further, even construing the word "may" as permissive, rather than mandatory, as appellants would have us do, the phrase is subject to several interpretations. Interpreted one way, the phrase could mean that there may be some

---

[2]See, e.g., *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 204, n.1, 105 S.Ct. 1904, 85 L.Ed.2d 206 ("questions * * * may be presented for arbitration"); *Nemitz v. Norfolk & W. Ry. Co.* (C.A.6 1971), 436 F.2d 841, 849 ("disputes may be referred to arbitration"); *United States v. Bankers Ins. Co.* (C.A.4 2001), 245 F.3d 315, 320-21 ("any * * * dispute may be submitted to arbitration").

situations where using the PRP is an option; interpreted another way, the phrase could mean that an employee is required to use the PRP in order to preserve his right to an outside forum. Neither interpretation is consistent with a conclusion that the phrase simply means that an employee has the option of proceeding with arbitration or giving up his claim.

{¶ 31} Furthermore, as evidenced by Sherwin-Williams' dealings with Hyde regarding his dispute, it is apparent that even Sherwin-Williams and its representatives are unable to determine exactly what is required by the PRP/ EDMAP procedures. The PRP states that "the issues covered under these procedures shall include the full range of employment-related issues including * * * performance evaluations," and Hyde's claims are premised upon the negative performance evaluations he received from defendants McIlwee and White. After the parties participated in mediation, Hyde requested that the parties submit their dispute to arbitration. Although the PRP specifically states that the procedures cover performance evaluations, in response to Hyde's request, Sherwin-Williams' Vice President of Employee Relations informed him that "disputes regarding performance evaluations per se are not subject to mediation/arbitration pursuant to the EDMAP policy" and asked that he amend his request to identify "the appropriate triggering claim." But now, despite the response from Sherwin-Williams' representative indicating that Hyde's complaint was not subject to

arbitration, appellants argue that the PRP and EDMAP "explicitly encompass" his claims.

**{¶ 32}** Nevertheless, appellants' actions in this case indicate that the procedures are not mandatory. On several occasions during the PRP/EDMAP procedures, Hyde requested amendments to the procedures, all of which Sherwin-Williams denied. Sherwin-Williams' representative advised Hyde that the PRP procedures were "non-negotiable" and that the parties "must adhere" to the process to maintain the "integrity" of same. But although Sherwin-Williams insisted that Hyde's obligations under the procedures were mandatory, appellants did not comply with the procedures that outlined what they were required to do during the PRP/EDMAP process. The record reflects that appellants missed every deadline imposed by their own "mandatory" procedures for responding to Hyde's complaint, telling Hyde their tardy responses were due to "extenuating circumstances" or "travel schedules." Thus, appellants ignored the mandates imposed on them by the "mandatory" language of the procedures but now argue that the procedures impose a mandatory obligation on Hyde. One can only conclude from appellants' unilateral determination that the "shall" language of the procedures imposed only permissive obligations on them that the procedures are in actuality permissive, not mandatory.

**{¶ 33}** Despite the strong policy favoring arbitration, we are compelled

to find that in light of the language of the PRP/EDMAP and appellants' actions with respect to Hyde's dispute, Hyde did not agree to mandatory arbitration as the exclusive remedy for his dispute. Accordingly, the trial court did not err in denying appellants' motion to stay proceedings and compel arbitration.

{¶ 34} Appellants' assignments of error are overruled.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MARY EILEEN KILBANE, A.J., CONCURS; and
COLLEEN CONWAY COONEY, J., DISSENTS WITH
SEPARATE OPINION.

COLLEEN CONWAY COONEY, J., DISSENTING:

{¶ 35} I respectfully dissent. I would reverse the court's denial of the stay because Hyde's complaint is subject to the arbitration provision he requested two years ago. Hyde pursued every step in his employer's dispute

resolution policy, unlike the plaintiffs in *Hardwick* who were unaware of the policy in 1999-2000. The version of the policy in effect at that time consisted of a one-page leaflet — a far different scenario than presented by Hyde in 2009. Therefore, I find *Hardwick* easily distinguishable.

{¶ 36} The EDMAP specifically states:

{¶ 37} "WAIVER OF EMPLOYEES' RIGHTS TO UTILIZE OTHER LEGAL PROCEDURES FOR RESOLVING DISPUTES

{¶ 38} In the absence of this policy, employees with covered disputes which were not resolved by the internal steps of the applicable Group/Division Problem Resolution Procedures, would need to initiate legal proceedings, which may entail time consuming proceedings, lengthy delays and expensive legal costs. Accordingly, by giving employees the right to utilize mediation and/or arbitration under this policy, the Company is granting a benefit to employees to which they would not otherwise be entitled.

{¶ 39} In exchange for this benefit, the Company and its employees shall be deemed by virtue of the employment and as a condition of employment, to have agreed to the fullest extent permitted by law, to resolve covered disputes through mediation and/or arbitration pursuant to this policy, and to waive any right they may have to utilize any other legal procedures for resolving disputes, including but not limited to the right to sue in court or to have a jury trial. However, nothing in this policy or any other Company policy, procedure or document prevents employees from exercising protected rights to file a charge or a complaint, or to otherwise participate in any manner in investigations, hearings, or proceedings with administrative agencies, including but not limited to the Equal Employment Opportunity Commission, state or local agencies handling discrimination claims, the National Labor Relations Board, the Department of Labor or state or local agencies handling wage and hour claims, etc."

{¶ 40} Hyde understood this condition of his employment, this benefit that would prevent "lengthy delays" if he initiated legal proceedings. I

would reverse the denial of the motion for stay so the parties may pursue the arbitration they each sought, albeit at different times.