[Cite as *State v. Higgins*, 2025-Ohio-2122.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Craig R. Baldwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Kevin W. Popham, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 24CA0003 |
| ARTHUR RICHARD HIGGINS, II. | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:  Appeal from the Perry County Court of
Common Pleas, Case No. 23-CR-0018

JUDGMENT:       Affirmed in part; Vacated in part

DATE OF JUDGMENT ENTRY:  June 13, 2025

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

DAVID YOST        BENJAMIN E. FICKEL
Attorney General       171 N. Mulberry St.
DREW WOOD        Logan, OH 43138
Special Prosecuting Attorney
30 East Broad Street
Columbus, OH 43215

*Popham, J.,*

{¶1} Defendant-Appellant Arthur Richard Higgins, II ("Higgins) appeals his convictions and sentences after a jury trial in the Perry County Court of Common Pleas. Based on the following, we affirm in part and vacate in part.

*Facts and Procedural History*

{¶2} Relevant to this appeal, with respect to Child Victim 1, born Nov. 9, 2021, ("CV1"), Higgins was indicted on two counts of rape (Counts one and two), felonies of the first degree in violation of R.C. 2907.02(A)(1)(b), and three counts of Gross Sexual Imposition, (Counts three, four and five) felonies of the third degree in violation of R.C. 2907.05(A)(4). Higgins was further indicted, with respect to Child Victim 2, born Sep. 17, 2014, ("CV2"), on one count of rape (Count six), a felony of the first degree in violation of R.C. 2907.02(A)(1)(b), and two counts of Gross Sexual Imposition (Counts seven and eight), felonies of the third degree in violation of R.C. 2907.05(A)(4). Higgins' conduct underlying the indictment was alleged to have taken place from 2019 through 2022.

{¶3} During Higgins' three-day jury trial, the State presented eight witnesses, including the parents of the child victims. Father testified that, in the past, he admonished Higgins, who is his father and the victims' grandfather, when he found Higgins inside the girls' small, backyard, pop-up tent. Father further testified that, on one occasion, he found Higgins alone in the bedroom with CV2. Father had to further admonish Higgins about having the girls underneath the blankets when sitting with him in his living room recliner chair.

{¶4} Mother testified at trial that Higgins stayed in the Philippines from April 2022 until April 24, 2023, at which time he returned to their home. Mother testified that CV1

was anxious. Mother further testified that CV2 had been disrespectful toward Higgins, began wetting the bed, and had several wetting incidents while at school. CV2 was diagnosed with early onset migraines due to childhood trauma. Mother testified that Higgins would cover the girls with blankets while they sat with him in his recliner chair. She further recalled Higgins, on one occasion, sleeping in the living room with CV1.

{¶5} Both parents testified at trial that they were called to the girls' school in April 2023 after CV1 made a concerning disclosure involving Higgins. Both parents denied speaking to the girls about the allegations.

{¶6} The jury also heard from CV2, who testified that when she was six years old Higgins performed an act of cunnilingus on her in the backyard tent while CV1 was on the swings. CV2 further testified that Higgins then called CV1 into the tent, while CV2 went to the swings.

{¶7} CV2 further testified that, when she was eight years old, she went to wake-up Higgins in the bedroom, and that Higgins told her to lay down in the bed. CV2 testified that Higgins pulled out his "wiener" and touched her on the thigh with it. CV2 also told the jury that while she was in the living room sitting in the recliner with Higgins, he pulled his "wiener out of his pants" and told her to touch it.

{¶8} CV1 testified at trial that Higgins performed cunnilingus on her in the backyard tent while CV2 was on the swings. CV1 further testified that Higgins had CV2 come into the tent, while CV1 went to the swings. CV1 testified that she could see Higgins messing with her sister's "girl parts."

{¶9} CV1 testified that, when she was eight or nine years old, after she and Higgins had watched movies together, she was sleeping on the couch in the living room

while Higgins slept in the recliner chair. CV1 testified that Higgins got up, came over to her, and performed cunnilingus on her, touched her with his hands, and rubbed his penis near her vagina. CV1 also testified that on a different occasion after the couch incident, but before the tent incident, Higgins, while in the backyard on the trampoline, played with her "girl parts" with his hands. Further, CV1 testified that, in the backyard swimming pool, Higgins dangled his penis while the girls swam between his legs and touched it. CV1 also testified to an incident while under the blankets on the recliner in the living room - Higgins grabbed the girls' hands and made them touch his penis through a hole in his pocket. CV1 told the jury she first disclosed Higgins' conduct to her friend at school, and then to a substitute teacher.

{¶10} The jury also heard that forensic interviews of both girls were conducted at the Harcum House. Madison Collier conducted CV1's interview. During the interview, CV1 disclosed touching Higgins' penis though a hole in his pocket and the two acts of cunnilingus. She further disclosed the act of touching that had occurred on the trampoline. She did not disclose during the interview that she touched Higgins's penis in the swimming pool, rather only that he had exposed it. CV1 further disclosed that Higgins exposed his penis about five times while on Facetime calls with her. *Transcript Harcum House interview of [CV1],* Apr. 17, 2023 at 33. CV1 further disclosed that Higgins touched her "boobs" with his hands on at least two occasions. *Id.* at 29.

{¶11} CV2 was interviewed by Kennedi McCall. During the interview, CV2 disclosed the act of cunnilingus that occurred in the backyard tent near the swing set. She further disclosed the touching incidents that had occurred in the bedroom and in the living room while under the blankets when sitting with Higgins in the recliner chair.

{¶12} The video recordings of the interviews were played for the jury over defense counsel's objection. 2T. at 274, 285; State's Exhibit 5; State's Exhibit 6.

{¶13} The jury also heard from the State's expert witness Cody Tatum, the Director of the Harcum House. Tatum testified in general to grooming behaviors, which he described as the preparation of both the child and the systems in the child's life to better allow access for abuse and to keep abuse quiet. He further testified to the "Child Abuse Accommodation Syndrome", which explains "the phenomenon of how children experience and internalize abuse."

{¶14} Higgins took the stand in his defense and denied all the allegations.

{¶15} The jury returned a guilty verdict on three counts of rape, and five counts of gross sexual imposition.

{¶16} The trial court conducted a sentencing hearing on February 29, 2024. For two counts of rape involving CV1, the trial court sentenced Higgins to serve a mandatory life sentence without the possibility of parole at a state penal institution; for one count of rape involving CV2, the trial court sentenced Higgins to serve a mandatory life sentence without the possibility of parole at a state penal institution, consecutive to counts one and two. The trial court also sentenced Higgins to forty-eight months in prison for each of the remaining five counts of gross sexual imposition, concurrent to each other and to counts one, two and three. Additionally, Higgins was classified as a Tier II sex offender.

*Assignments of Error*

{¶17} Higgins raises the following five assignments of error for our review,

{¶18} "I. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO ORDER SEPARATE TRIALS FOR THE SEPARATE VICTIMS."

**{¶19}** "II. THE TRIAL COURT ERRED BY PLAYING THE CHILD ADVOCACY CENTER INTERVIEWS IN THEIR ENTIRETY AND ADMITTING BOTH INTERVIEWS AS EVIDENCE."

**{¶20}** "III. APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS BECAUSE THE OFFENSES WERE NOT CHARGED WITH SUFFICIENT SPECIFICITY AND NOT SUFFICIENT FOR THE JURY TO DETERMINE WHAT OCCURRANCES FORMED THE BASIS OF THE CRIMINAL CHARGES."

**{¶21}** "IV. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED."

**{¶22}** "V. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

I.

**{¶23}** In his first assignment of error, Higgins argues that the trial court abused its discretion in overruling his motion to sever the counts for trial.

### Standard of Review

**{¶24}** We review a trial court's denial of a motion to sever for abuse of discretion. *State v. Ford*, 2019-Ohio-4539, ¶ 40, citing *State v. Hand*, 2006-Ohio-18. A court abuses its discretion when it acts unreasonably, makes a legal error, or reaches a conclusion not supported by the evidence. *Tennant v. Gallick*, 2014-Ohio-477, ¶ 35 (9th Dist.); *State v. Firouzmandi*, 2006-Ohio-5823, ¶ 54 (5th Dist.).

### Issue for Review

*Did the trial court abuse its discretion by denying Higgins's motion to sever?*

**Joinder and Severance**

{¶25}  Under Crim.R. 8(A), offenses may be joined if they are of the same or similar character, arise from the same act or transaction, or are part of a common scheme or plan.  Joinder promotes judicial economy and consistency in verdicts.  *State v. Hamblin*, 37 Ohio St.3d 153, 158 (1988).

{¶26}  However, Crim.R. 14 permits severance if joinder prejudices the defendant. The defendant bears the burden to provide sufficient information to allow the trial court to weigh the risk of prejudice against the benefits of joinder.  *State v. Torres*, 66 Ohio St.2d 340, 343 (1981).

{¶27}  Even if some prejudice appears, severance is not required if the State can show that: (1) evidence of the joined offenses would be admissible under Evid.R. 404(B), or (2) the evidence of each offense is simple and direct. *State v. Lott*, 51 Ohio St.3d 160, 163 (1990).

**Trial Court's Ruling**

{¶28}  The trial court found the incidents occurred close in time and shared similar characteristics, supporting a common scheme or plan.  It also concluded that each victim was a material witness to abuse of the other, that the probative value of the evidence was not outweighed by prejudice (Evid.R. 403(A)), and that the evidence was simple and direct.

**Evid. R. 404(B)**

{¶29}  Evid.R. 404(B) bars evidence of other crimes, wrongs, or acts offered solely to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.  However, such evidence may be admissible to

prove motive, opportunity, intent, plan, identity, or absence of mistake. *State v. Smith*, 2020-Ohio-4441, ¶¶ 36–38; *State v. Hartman*, 2020-Ohio-4440, ¶ 22.

**{¶30}** Here, the identity of the perpetrator was not in dispute. Both victims identified Higgins as the perpetrator. Nor was Higgins' mental state at issue, as the victims were under 13 years of age. *See* R.C. 2907.02(A)(1)(b); R.C. 2907.05(A)(4). Higgins denied any abuse occurred, negating any claim of mistake or accident. Furthermore, the charged acts of gross sexual imposition were committed in different locations, under different circumstances, and were not observed by the other victim. Thus, the evidence does not fit within the traditional exceptions under Evid.R. 404(B).

**{¶31}** The Supreme Court of Ohio has emphasized the heightened danger of prejudice when other-acts evidence is admitted in sexual offense cases. *State v. Schaim*, 65 Ohio St.3d 51, 59–60 (1992). Courts must be especially cautious to avoid improper character inferences.

### Simple and Direct Evidence

**{¶32}** Even assuming the evidence was not admissible under Evid.R. 404(B), the State met the second prong of *Lott*. Each victim described distinct, specific incidents of abuse. Their testimony was detailed and factually separable. The jury could easily distinguish the evidence relating to each offense.

**{¶33}** Further, the jury received clear instructions to consider each count separately and not to let their verdict on one count influence their verdict on another. 3T. at 430. Such instructions are presumed effective. *Hamblin*, supra.

**{¶34}** Higgins failed to show that the trial court acted unreasonably, made a legal error, or relied on insufficient evidence. Accordingly, we find no abuse of discretion in the trial court's denial of Higgins' motion to sever.

II.

**{¶35}** In his second assignment of error, Higgins argues that the trial court erred by admitting certain statements made by the victims during interviews at the child-advocacy center. Specifically, Higgins contends that "portions of the forensic interviews that allege actions of the Appellant exposing his penis constitute improper other bad acts under Evid.R. 404(B) as it is uncharged conduct and impermissible character evidence." Appellant's Brief at 12.

**{¶36}** The State argues that Higgins waived this argument by filing his motion in limine concerning the evidence after the trial had begun. The State further contends that because Higgins sought to exclude evidence, he should have filed a motion to suppress.

**Trial Court Proceedings**

**{¶37}** The State filed an initial, pre-trial motion in limine to determine the admissibility of the forensic interviews. *Motion in Limine*, filed Nov. 15, 2023 (Docket Entry No. 32). The trial court scheduled a hearing on the motion for December 12, 2023. (Docket Entry No. 34). No transcript of that hearing was included in the appellate record. In Higgins' response to the State's motion, he did not specifically request the exclusion of victim statements alleging that he exposed his penis. (Docket Entry No. 48).

**{¶38}** On January 8, 2024, the trial court ruled statements made for purposes of medical diagnosis and treatment are admissible, while statements made for investigative purposes are not. (Docket Entry No. 55). The trial court further held that if either victim

did not testify at trial, a redacted transcript of that witness's statement would be provided to the jury. The trial court further noted that, if the victims did testify, all statements would be admissible.

{¶39} Trial commenced on February 23, 2024. Three days into trial, on February 26, 2024, Higgins filed a motion in limine seeking to exclude portions of the forensic interviews concerning Higgins exposing his penis, arguing the evidence constituted improper "other bad acts" under Evid.R. 404(B). (Docket Entry No. 110). The trial court overruled the motion. (Docket Entry No. 113). Higgins objected to the interviews being played for the jury. 2T. at 274, 285. The forensic interviews were admitted during the testimony of Madison Collier and Kennedi McCall on February 26, 2024. 2T. at 273, 285.

### Motion to Suppress v. Motion in Limine

{¶40} The purpose and effect of a motion to suppress and a motion in limine are distinct. *State v. French*, 72 Ohio St.3d 446, 449 (1995). A motion to suppress is defined as a "device used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation of the Fourth Amendment (search and seizure), the Fifth Amendment (privilege against self-incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation, etc.) of the U.S. Constitution." Black's Law Dictionary (6th Ed. 1990) 1014; *French*, 72 Ohio St.3d at 449.

{¶41} A motion in limine is defined as "a pretrial motion requesting the court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to the moving party that curative instructions cannot prevent a pre-dispositional effect on the jury." Black's Law Dictionary, at 1013. The purpose of a motion in limine is to avoid injecting into the trial matters that are irrelevant, inadmissible, and prejudicial.

The granting of such a motion is not a definitive ruling on admissibility and, where properly drawn, cannot constitute error. *French* at 449-450; *see State v. Maurer*, 15 Ohio St.3d 239, 259 (1984).

**{¶42}** In *French*, the Supreme Court of Ohio noted,

Confusion and inaccuracy may arise, however, because a motion in limine may be used in two ways. It may be used as a preliminary means of raising objections to evidentiary issues to prevent prejudicial questions and statements until the admissibility of the questionable evidence can be determined outside the presence of the jury. It may also be used as the functional equivalent of a motion to suppress evidence that is either not competent or improper due to some unusual circumstance not rising to the level of a constitutional violation. Palmer, Ohio Rules of Evidence, Rules Manual (1984) 446, *cited in State v. Maurer, supra*, 15 Ohio St.3d at 259, 15 OBR at 396–397, 473 N.E.2d at 787, fn. 14.

*French*, 72 Ohio St.3d at 450.

### Other Acts Evidence

**{¶43}** Here, Higgins' motion sought to exclude evidence that he argued violated Evid.R. 404(B). Because the testimony was known in advance of trial, he challenged the State's compliance with that rule. As in *French,* Higgins was not seeking a preliminary ruling on an evidentiary issue but was instead attempting to exclude the evidence. Accordingly, Higgins' motion in limine functioned as a motion to suppress.

**{¶44}** Under Crim.R. 12(C), pretrial motions must be filed within 35 days after arraignment or seven days before trial, whichever is earlier. The trial court may extend

the deadline in the interest of justice. *See Akron v. Milewski*, 21 Ohio App.3d 140, 142 (9th Dist. 1985); *State v. Khaliq*, 2017-Ohio-7136, ¶ 32 (5th Dist.). Here, the trial court did not deny Higgins' motion as untimely. Rather, the trial court considered the motion on its merits and overruled the motion.

{¶45} The admissibility of other acts evidence under Evid.R. 404(B) is a question of law. *State v. Hartman*, ¶ 22. Although Evid.R. 404(B) prohibits improper character evidence, trial courts retain discretion to admit other acts evidence for permissible purposes. *Id.*, citing *State v. Williams*, 2012-Ohio-5695, ¶ 17.

{¶46} As noted in our Statement of Facts, CV1 disclosed during her forensic interview that Higgins exposed his penis approximately five times while on FaceTime calls with her. Transcript, *Harcum House interview of [CV1]*, Apr. 17, 2023 at 33. She also disclosed that Higgins touched her "boobs" with his hands on at least two occasions. Id. at 29. The State concedes that Higgins was not given notice of these allegations in the Indictment. See our analysis below.

### Improperly Admitted "Other Acts" Evidence

{¶47} In determining whether to grant a new trial due to erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the improperly admitted evidence and the strength of the remaining evidence absent that evidence. *State v. Morris*, 2014-Ohio-5052, syllabus; *see also State v. Bond*, 2023-Ohio-2361, ¶ 53 (5th Dist.).

{¶48} Here, both victims testified and were subject to cross-examination. Higgins also testified and denied all the allegations.

**{¶49}** CV1 testified to one act of cunnilingus occurring in the backyard tent. 2T. at 230-231. She also testified to an act of cunnilingus occurring on the living room couch when she was eight or nine years old. *Id.* at 234-235. CV1 testified that Higgins touched her "girl parts" while on the trampoline in the backyard. 2T. at 236.

**{¶50}** CV2 testified to one act of cunnilingus occurring in the backyard tent. 2T. at 206-207. CV2 testified that Higgins touched her thigh with his bare penis in her brother's bedroom when she was eight years old. 2T. at 210-212. CV2 also testified that Higgins forced her to touch his penis through a hole in his pocket while under a blanket on the recliner chair. 2T. at 212- 213.

**{¶51}** We find it highly speculative to suggest that the jury disregarded its oath and convicted Higgins solely based on the testimony regarding the uncharged incidents of exposure. Excluding the evidence concerning the exposure of his penis, the remaining evidence was sufficient to prove Higgins's guilt beyond a reasonable doubt.

**{¶52}** We conclude there is no reasonable possibility that the testimony regarding Higgins' exposure of his penis contributed to the convictions. Accordingly, we find, beyond a reasonable doubt, any error in admitting the testimony to be harmless.

**{¶53}** Higgins' second assignment of error is overruled.

III.

**{¶54}** Before addressing Higgins's third assignment of error, we note the following procedural issue. In his appellate brief, Higgins fails to separately argue, as required by App.R. 16(A)(7), the two issues raised in his third assignment of error. Instead, Higgins presents a single argument in support of two distinct issues. Under App.R. 12(A)(2), we may disregard any assignment of error not separately argued. Accordingly, we could

exercise our discretion to summarily overrule Higgins' third assignment of error. *See Comisford v. Erie Ins. Property Cas. Co.,* 2011-Ohio-1373, ¶29 (4th Dist.); *Newman v. Enriquez*, 171 Ohio App.3d 117, ¶ 18 (4th Dist. 2007); *Hyde v. Sherwin-Williams Co.*, 2011-Ohio-4234, ¶12 (8th Dist.); *Pahoundis v. Beamer*, 2009-Ohio-6881, ¶65 (5th Dist.); *State v. Emch,* 2023-Ohio-3553, ¶16 (5th Dist.). We decline to do so. In the interest of justice, we will address Higgins' third assignment of error.

**{¶55}** Higgins raises two distinct arguments in his third assignment of error. First, Higgins argues that the offenses charged lacked sufficient specificity to inform him of the conduct forming the basis for each count. Second, Higgins argues that the jury instruction failed to adequately identify the conduct underlying each charge.

## Plain error

**{¶56}** Higgins failed to challenge the indictment in the trial court. Crim. R. 12(C) provides in pertinent part:

(C) Pretrial Motions. Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:

(2) Defenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding) [.]

**{¶57}** Failure to timely raise an objection under Crim.R. 12 constitutes waiver (forfeiture). Crim. R. 12(H). Because Higgins did not raise his claim of a defective

indictment in the trial court in accordance with Crim. R. 12, he has forfeited all but plain error. *State v. Ahmad*, 2018-Ohio-3556, ¶ 17 (5th Dist.); *State v. Hawks,* 2025-Ohio-23, ¶ 7 (5th Dist.); *Cleveland v. Daniels*, 2018-Ohio-4773, ¶ 30 (8th Dist.); *Cleveland v. Bates*, 2023-Ohio-3627, ¶17 (8th Dist.).

**{¶58}** Higgins also failed to object to the jury instructions at trial. Crim.R. 30(A) provides:

> A party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

**{¶59}** It is well established that, in accordance with Crim.R. 30(A), failure to object to jury instructions before the jury retires, absent plain error, constitutes waiver (forfeiture). *State v. Williford,* 49 Ohio St.3d 247, 251 (1990); *State v. Underwood*, 3 Ohio St.3d 12, (1983); *State v. Long*, 53 Ohio St.2d 91 (1978).

**{¶60}** Crim.R. 52 grants appellate courts limited authority to correct errors occurring during trial. The rule distinguishes between errors preserved at trial [Crim.R. 52(a)] and unpreserved errors. [Crim.R. 52(b)]. The key distinction between plain-error review, which is the standard employed when a defendant failed to object at trial, and harmless-error review, which is employed when a defendant did object, is the party bearing the burden. *See State v. Jones*, 2020-Ohio-3051, ¶ 17-18. Under plain-error review, the defendant must demonstrate that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct

a manifest miscarriage of justice. *Id.* at 17. Under harmless-error review, the State bears the burden of demonstrating that the error did not affect the substantial rights of the defendant. *Id.* at 18. *See State v. Bond*, 2022-Ohio-4150, ¶ 7.

**{¶61}** Crim.R. 52(a) precludes reversal only if the error "does not affect substantial rights," whereas Crim.R. 52(b) permits review only if the error affects substantial rights. *State v. Williams*, 2024-Ohio-5578, ¶ 78 (2004), *quoting United States v. Olano*, 507 U.S. 725, 734-735 (1993).

**{¶62}** To establish plain error under Crim.R. 52(b), Higgins must show that an error occurred, that it was obvious, and that there is a reasonable probability it affected the outcome of the trial. *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, *quoting State v. Rogers,* 2015-Ohio-2459, ¶ 22. *Accord State v. Bailey*, 2022-Ohio-4407, ¶ 8. These elements are "conjunctive," meaning "all three must apply to justify an appellate court's intervention." *Bailey* at ¶ 9, *citing State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

**{¶63}** To show an error affected substantial rights, the defendant must demonstrate "a reasonable probability that the error resulted in prejudice - the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis deleted.) *State v. Rogers*, 2015-Ohio-2459, ¶ 22, *citing United States v. Dominguez Benitez,* 542 U.S. 74, 81-83, (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B)). *Bond* at ¶ 22. The Supreme Court of Ohio in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. *Rogers*, ¶ 23; *State v. Perry*, 101 Ohio St.3d 118, 120 (2004). *See State v. Newlon*, 2024-Ohio-3433 (5th Dist.); *State v. Wycinski*, 2024-Ohio-5203, ¶¶ 21-23 (5th Dist.). An appellate court may correct

plain error only under exceptional circumstances to prevent a manifest miscarriage of justice. *Bailey* at ¶ 8, *citing State v. Long,* 53 Ohio St.2d 91(1978), paragraph three of the syllabus.

## The Indictment

**{¶64}** The State concedes that Higgins did not receive adequate notice of the conduct underlying Counts 4 and 5 of the indictment. (Appellee's brief at 16-18). The State agrees vacating those convictions and sentences is appropriate. *Id.*

**{¶65}** As to the remaining counts, Higgins concedes that the indictment was sufficient. (Appellant's brief at 15).

## Jury instructions - Rape

**{¶66}** The trial court instructed the jury that Counts 1 and 2 (involving CV1) and Count 6 (involving CV2) charged rape. The trial court further instructed that Counts 1 and 6 occurred between January of 2021 and April of 2022, while Count 2 occurred between January of 2019 and April of 2022. 3T. at 426. The trial court defined rape as engaging in "sexual conduct," as set forth in R.C. 2907.01(A). *Id.* at 427-428.

**{¶67}** CV1 testified to one act of cunnilingus occurring in the backyard tent. 2T. at 230-231. She also testified to an act of cunnilingus occurring on the living room couch when she was eight or nine years old. *Id.* at 234-235.

**{¶68}** CV2 testified to one act of cunnilingus occurring in the backyard tent. 2T. at 206-207.

**{¶69}** Accordingly, we find that the jury had sufficient evidence supporting each rape charge.

**Jury instructions - Gross sexual imposition**

{¶70}  The trial court instructed the jury that CV1 was the victim in Count 3, and CV2 was the victim in Counts 7 and 8. All of the offenses allegedly occurred between January 2021 and April 2022.  The trial court defined gross sexual conduct as involving "sexual contact" and defined that term in accordance with R.C. 2901.01(B).  3T. at 428-429.

{¶71}  CV1 testified that Higgins touched her "girl parts" while on the trampoline in the backyard.  2T. at 236.

{¶72}  CV2 testified that Higgins touched her thigh with his bare penis in her brother's bedroom when she was eight years old.  2T. at 210-212.  She also testified that Higgins forced her to touch his penis through a hole in his pocket while under a blanket on the recliner chair.  *Id.* at 212- 213.

{¶73}  As such, the State presented evidence, which if believed by a properly instructed jury, supported convictions on Counts 3, 7, and 8.

**Conclusion**

{¶74}  Higgins cannot demonstrate that any plain error in the trial court's jury instructions affected his substantial rights.  We cannot conclude that, but for the alleged error, the outcome of the trial would have been different.

{¶75}  The State concedes that Higgins did not receive adequate notice of the conduct underlying Counts 4 and 5 of the indictment.  (Appellee's brief at 16-18).  The State agrees vacating those convictions and sentences is appropriate.  *Id.* Section 3(B)(2), Article IV of the Ohio Constitution grants appellate courts authority to affirm, reverse, or modify lower court judgments.  Accordingly, Higgins' convictions and sentences on

Counts 4 and 5 are vacated. This decision does not affect the guilty verdicts and sentences on the other counts of the indictment. Higgins' third assignment of error is overruled in all other respects.

IV.

**{¶76}** In his fourth assignment of error, Higgins argues that his convictions are against the manifest weight of the evidence.

**Standard of Appellate Review – Manifest Weight of the Evidence**

**{¶77}** The term **"manifest weight of the evidence"** relates to persuasion. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

**{¶78}** When reviewing the manifest weight of the evidence, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient. *Thompkins*, 78 Ohio St.3d at 386 - 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001). In this role, an appellate court acts as a "thirteenth juror" and may disagree with the jury's assessment of conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *State v. Wilson*, 2007-Ohio-2202, ¶ 25.

**{¶79}** Appellate courts traditionally presume the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in

evaluating credibility. *Eastley*, 2012-Ohio-2179, ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**{¶80}** However, the Eighth District recently noted in *State v. Reillo*, 2024-Ohio-3307, ¶ 20, *appeal allowed,* 2025-Ohio-705 (Table), that *Eastley* arguably extended this presumption from civil to criminal cases. *Id.* at ¶ 27. The court cautioned that deferring to credibility determinations would collapse the distinction between sufficiency and weight of the evidence. *Reillo* at ¶ 23. It observed that if credibility findings were insulated from review, there would be little reason to raise a manifest-weight challenge. *Id. See also State v. Butler*, 2024-Ohio-5879, ¶ 27 (5th Dist.). Thus, acting as a thirteenth juror, the appellate court reviews credibility de novo. *Id.*

**{¶81}** A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶82}** To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2–4, citing *Thompkins*, syllabus ¶ 4.

**Issue for review**

*Did the jury lose its way and create a manifest miscarriage of justice?*

**{¶83}** Higgins argues that the victims were children, and the remaining witnesses - the children's parents and the State's expert witnesses - were biased in favor of the children. Higgins also points to the lack of corroborating physical evidence and eyewitnesses.

**{¶84}** Each of the child victims testified and was subject to cross-examination, as was Higgins.

**{¶85}** The jury, as factfinder, was free to assess credibility and accept or reject any portion of testimony. Inconsistencies do not render a conviction against the manifest weight of the evidence. *State v. Craig*, 2000 WL 29752 (10th Dist. Mar. 23, 2000) *citing State v. Nivens*, 1996 WL 284714 (10th Dist. May 28, 1996).

**{¶86}** Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997).*

**{¶87}** The fact that the jury chose to believe the testimony of the State's witnesses does not, in and of itself, render a conviction against the manifest weight of the evidence. The jury heard and observed all witnesses, including Higgins, and was in the best position to evaluate credibility.

**{¶88}** Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of the witnesses, we find that the record contains no compelling evidence weighing heavily against Higgins' convictions. We find the greater amount of credible evidence produced at trial supports the jury's conclusion that Higgins committed the offenses. Accordingly, we find no indication that the jury lost its way or ignored substantial evidence in reaching its verdict.

**{¶89}** Higgins' fourth assignment of error is overruled.

V.

**{¶90}** In his fifth assignment of error, Higgins contends that he has been prejudiced by his trial counsel's ineffective representation.

**{¶91}** To prevail on a claim of ineffective assistance, a defendant must show (1) deficient performance and (2) resulting prejudice—i.e., a reasonable probability the outcome would have differed but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–694 (1984); *State v. Harris*, 2024-Ohio-2993, ¶¶ 28–29 (5th Dist.).

**{¶92}** Higgins raises five alleged deficiencies: counsel's failure to (1) call an expert witness; (2) provide him with the expert's report; (3) object to expert testimony on grooming; (4) call the defense's private investigator; and (5) move to waive court costs or fines.

**{¶93}** Decisions not to call an expert or investigator are tactical and do not, alone, constitute ineffective assistance. *State v. Thompson*, 33 Ohio St.3d 1, 10–11 (1987); *State v. Hoffner*, 2004-Ohio-3430, ¶ 45. The record does not reflect what these witnesses would have said, and prejudice cannot be presumed without evidence outside the record. Such claims are more appropriately raised in postconviction proceedings. *State v. Madrigal*, 87 Ohio St.3d 378, 390-91 (2000). Additionally, Higgins points to no authority for the proposition that counsel's failure to provide him with a copy of a report from an expert witness, who was not called to testify at trial, constitutes ineffective assistance of counsel. Moreover, Higgins does not point to specific exculpatory evidence allegedly contained within the report.

**{¶94}** As for the failure to object to the State's expert, Higgins cites no legal basis for exclusion. The trial court held a *Daubert* hearing, found the witness qualified under

Evid.R. 702, and Higgins has not appealed that ruling. Absent a showing of inadmissibility or prejudice, counsel's failure to object does not constitute ineffective assistance. *State v. Fears*, 86 Ohio St.3d 329, 347 (1999).

{¶95} Finally, the trial court imposed no fines - only court costs - and considered Higgins' indigency at sentencing. Sent. T. at 4-5, 11-12. The trial court declined to waive costs but permitted a later motion. Sent. T. at 11-12. Higgins thus fails to show that any omission by counsel prejudiced him. *State v. Davis*, 160 Ohio St.3d 452, 2020-Ohio-309, ¶¶ 14–15.

{¶96} Higgins' fifth assignment of error is overruled.

## Conclusion

{¶97} The judgment of the Perry County Court of Common Pleas is affirmed, in part and vacated in part.

{¶98} Section 3(B) (2), Article IV of the Ohio Constitution grants appellate courts authority to affirm, reverse, or modify lower court judgments. Higgins' convictions and sentences on Counts 4 and 5 are vacated. This decision does not affect the guilty verdicts and sentences on the other counts of the indictment. The decision of the Perry County Court of Common Pleas is affirmed in all other respects.

By Popham, J.,

Baldwin, P.J., and

Hoffman, J., concur